735 So.2d 560 (1999)
LIBERTY MUTUAL INSURANCE COMPANY, Petitioner,
v.
LEASE AMERICA, INC., a/k/a Lease America Services, Inc.; and Gerald Rhodes, individually and in his corporate capacity, Respondents.
No. 98-4115.
District Court of Appeal of Florida, Fourth District.
June 9, 1999.
Glenda L. Thornton and Frederick L. Bateman, Jr., of Foley & Lardner, Tallahassee, for petitioner.
Steven A. Mayans and E. Cole FitzGerald, III, of FitzGerald, Hawkins, Mayans & Cook, P.A., West Palm Beach, for respondents.
PER CURIAM.
Petitioner seeks certiorari review of an order imposing sanctions and requiring the production of discovery which petitioner claims is subject to various privileges. Respondents assert that petitioner waived its claims of privilege. Based upon the record before us, we grant the petition in part *561 insofar as it requires the production of privileged information.
Petitioner is a worker's compensation insurer seeking to prevent disclosure of documents that it claims are either irrelevant or privileged. There have been at least five extensive requests for production in this case. In connection with many of the requests, the petitioner asserted through several motions that the documents contained confidential business information or contained information on other insureds whose privacy was protected by other states' laws. Petitioner constructed a privilege log to list all of the documents it claimed were privileged. The parties then entered into a stipulated order agreeing to submit these claims of privilege to a special master.
A month after the entry of the stipulated order, respondents sent petitioner's attorney a letter outlining several categories of documents which had been requested but had not been produced. These included documents that are termed NP-8s, NP-10s and NP-5s. At the same time, respondent filed a motion to compel the production of these documents. Paragraphs (g) and (h) of the letter demonstrate that the parties took into consideration the assertions of privilege in their ongoing negotiations concerning discovery.
At an October 22, 1998 hearing on a motion to compel discovery, E. Cole Fitz-Gerald, III, counsel for respondents, summarized the parties' agreement for the court:
Mr. FitzGerald: Your Honor, let me read a motion in the record. We had a motion to compel because we had a bunch of different motions pending and we encapsulated them and Ms. Thornton and I reached an agreement on. I will submit an order that attaches a letter I wrote on October 14th and it will say Liberty Mutual will in 15 days either produce all the documents described in my letter; or, in the alternative, submit an affidavit stating that the documents do not exist, or they don't have any control over them.
With regard to one of the subcategories in my letter, they have a[n] additional 15 days, for a total of 30 days, and MP 10s, 8s and 5s, they agreed to give us access to the originals because we believe they have marginal notations, or they will, in turn tell us where to find them.
Is that a fair statement?
Ms. Thornton [Petitioner's counsel]: Yeah, that's it.
The order entered on October 28 followed that agreement.
Eight days later petitioner filed a notice of compliance together with an affidavit from an employee of petitioner. The affidavit explained that Petitioner was producing only redacted versions of the NP-8s, because it claimed that some of the information was irrelevant, privileged and contained proprietary information. These documents were then added to petitioner's privilege log. Petitioner's employee also testified in his affidavit that petitioner now objected to the production of NP-5s because the information was also contained on the NP-8s and was therefore redundant.
Respondents moved for sanctions because of petitioner's redaction of the NP-5s and the failure to produce the NP-8s. The court granted the motion. Petitioner moved to reconsider the ruling and requested an in camera inspection of the redacted portions of the NP-8 and NP-5 documents before the special master. In this motion, petitioner admitted that it was only after the entry of the October 28th order, when petitioner sent the documents to its attorney, that counsel first realized that they contained "irrelevant attorney fee information and otherwise privileged information." The court denied the motion, and petitioner requested review by this court.
We disagree with respondents' assertion that petitioner's agreement to *562 comply with the second discovery request acted as a waiver of its previous assertions of privilege and the stipulated order to refer the matter to a special master. Generally, the initial failure to make a claim for privilege does not result in the waiver of the privilege. Cf. Truly Nolen Exterminating, Inc. v. Thomasson, 554 So.2d 5, 5-6 (Fla. 3d DCA 1989)(failure to assert work-product privilege at earliest opportunity does not constitute waiver "so long as the privilege is asserted by a pleading, to the trial court, before there has been an actual disclosure of the information alleged to be protected"), rev. dismissed, 558 So.2d 20 (Fla.1990); Insurance Co. of N. Am. v. Noya, 398 So.2d 836, 838 (Fla. 5th DCA 1981)(failure to file timely objections does not bar party from asserting privilege).
In Gross v. Security Trust Co., 462 So.2d 580 (Fla. 4th DCA 1985), a trial court order required the production of video tapes. As our opinion stated, "[a]pparently, no one had reviewed the tapes prior to the entry of the trial court's order...." Id. at 580. When petitioner's counsel reviewed them, he discovered what he alleged to be attorney-client privileged matter contained within and filed a motion for rehearing of the order compelling their production. The trial court denied the motion. However, we granted the petition noting:
There are two separate, unrelated areas of discussion. The first, that of attorney-client privilege, has merit, and requires that we grant relief, in part because violation of the privilege is outside the scope of discovery, which is expressly limited to matters not privileged. See Fla.R.Civ.P. 1.280(b). Accordingly, while petitioner's counsel obviously should have asserted privilege at the earliest time, his failure to do so will not prevent the trial court's in camera examination of the tape to determine if privilege exists. We are not the first to hold as we now do upon the question of timeliness vis-a-vis privilege. See Noya, 398 So.2d at 836 (Fla. 5th DCA 1981). The judiciary of this state should protect communications which Floridians recognize as privileged, without being hobbled by less important considerations. Here, this privilege is belatedly said to exist on a tape of a meeting at which the attorneys, the decedent and his personal representative were present. The trial court can see if the privilege applies, and if so, protect the tape's confidentiality.... Id. at 580-81. A similar claim is made in this case. Petitioner contends that it did not discover the privileged matter in this group of documents until after the order was entered compelling production. Thus, to the extent that the matters are privileged, based upon our prior case law, petitioner may assert the claim.
However, to the extent that the matters are simply irrelevant, we dismiss the petition. Production of irrelevant material does not rise to the level of irreparable harm for certiorari to lie. See Coyne v. Schwartz, Gold, Cohen, Zakarin & Kotler, P.A., 715 So.2d 1021, 1023 (Fla. 4th DCA 1998); Eberhardt v. Eberhardt, 666 So.2d 1024 (Fla. 4th DCA 1996), approved by Allstate Ins. Co. v. Boecher, 24 Fla. L. Weekly 5187, 189-90, 733 So.2d 993, 998-99 (Fla.1999).
We would also caution that we do not countenance dilatory tactics in belatedly asserting a privilege claim. However, the rules provide for the award of the expenses in relation to a motion for protective order should the court find that the motion for protective order claiming privileges was not justified. See Fla.R.Civ.P. 1.280(c) and 1.380(a)(4).
We therefore grant the petition for certiorari in part and quash the order to the extent that it requires the production of privileged information. The parties shall proceed to submit the discovery to the special master to determine the privilege issues relating to the requested discovery.
STONE, C.J., WARNER and GROSS, JJ., concur.